Case 1:23-cv-00072 Document 10 Filed on 12/14/23 in TXSD Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
December 14, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| KENDRA MANNING, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:23-cv-72 |
| | § | |
| KILOLO KIJAKAZI, | § | |
| Commissioner of Social Security, | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

**I. Synopsis**

Kendra Noel Manning ("Manning") seeks review of the decision denying her claim for supplemental security income ("SSI") under *Title XVI of the Social Security Act, 42 U.S.C. §§ 1318 – 1383*. Manning filed her application in January 2021 alleging disability as of November 2020. Dkt. No. 3-1, p. 359.[1] Her claim was initially denied. Dkt. No. 3-1, p. 213. Following a hearing, during which both Manning and a vocational expert ("VE") appeared and testified, the Administrative Law Judge ("ALJ") denied benefits on October 21, 2022. Dkt. No. 3-1, p. 55. Manning sought review of the ALJ's decision through the Appeals Council who found no basis for review. Dkt. No. 3-1, p. 2. This appeal followed. Manning has since filed a Motion for Summary Judgment. Dkt. No. 7.

At issue is whether there is substantial evidence to support a determination by the ALJ as to Manning's residual functional capacity ("RFC") for purposes of the fourth step of the Social Security Administration's five-step disability evaluation. After review of the parties' briefings, the record and the relevant law, the Magistrate Judge RECOMMENDS the Plaintiff's Motion for Summary Judgment be GRANTED, and this case be REMANDED for further proceedings consistent with this Report and Recommendation.

---

[1] The citation to the record refers to the Bates-stamped number on each record page.

## II. Background

### A. Jurisdiction

This court has jurisdiction under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security.  Venue is appropriate because Manning resides in Cameron County, Texas.  28 U.S.C. §124(b)(4).

### B. Procedural History

On January 5, 2021, Manning applied to receive Supplemental Security Income, claiming a disability effective date of November 14, 2020. Dkt. No.  3-1, p. 359.

Manning's claim was initially denied by the Social Security Administration. Dkt. No. 3-1, p. 212.  On July 12, 2022, an ALJ held an oral hearing at which Manning asked for an extension of time to accommodate her recently retained legal counsel. Dkt. No. 3-1, p. 160. Subsequently, an oral hearing on the merits of her claim was conducted on October 5, 2022, at which Manning gave substantive testimony as to the nature and treatment of her disability. Dkt. No. 3-1, pp. 165, 174 – 182.  In addition to Manning's own testimony, the Court heard from vocational expert, Iric Saldivar. Dkt. No. 3-1, pp. 183-188. Saldivar answered hypothetical questions regarding the availability and applicability of jobs in the national economy given a person's functional limitations. *Id.* The ALJ submitted their decision that Manning was not entitled to benefits on October 21, 2022. Dkt. No. 3-1, p. 55. As a result, Manning has sought timely review of the ALJ's decision with the Appeals Council who ultimately found no basis for review. Dkt. No. 3-1, pp. 2-8. Now, Manning seeks review of the Commissioner's decision with this Court, moving the Court to grant a summary judgment motion in her favor. Dkt. No. 7.

### C. Factual Context

Ms. Manning was born in 1999 and was 21 years old when she applied for Supplemental Security Income. Dkt. No.  3-1, p. 359.  She has a high school equivalent education and no past relevant work experience. Dkt. No. 3-1, p. 360. Manning is alleging physical disability based on her diagnoses of cystic fibrosis, pancreatic

insufficiency, and a heart murmur. Dkt. No. 3-1, p. 1009. Manning is alleging mental disability based on her diagnoses of post-traumatic stress disorder (PTSD) and adjustment disorder with mixed anxiety. Dkt. No. 3-1, p. 1019. However, neither Manning nor her counsel are claiming her present condition reaches the statutory listing of cystic fibrosis found in 20 CFR Part 404, Subpart P, Appendix 1. Rather, they argue Manning has several medically cognizable diagnoses, the symptoms of which are managed only through diligent compliance with time-consuming treatment that severely interferes with her ability to engage in gainful activity. Dkt. No. 3-1, p. 173. The ALJ found Manning was treatment compliant, suffered as a result of all of the above disorders to varying degrees of severity, and had some level of impairment. Dkt. No. 3-1, pp. 62-66. However, the ALJ's ultimate determination was that no disorders, considered singly or together, rise to a level of severe impairment. Dkt. No. 3-1, p. 172.

### D. Disability Evaluations

Three state agency consultants, Dr. Tom Dees, Dr. Michael Plasay, and Dr. Jeanine reviewed Manning's medical records regarding her physical and psychological abilities as part of the disability determination process. Two other treating healthcare professionals also contributed significantly to Manning's submitted medical history: Dr. Joseph Tayar and Counselor Jay Jeter. All evaluations are meant to be considered by the ALJ and given significance on the basis of supportability, consistency, relationship with the claimant. Other factors like familiarity with other evidence or understanding of disability policies can also be used by the ALJ to support their evaluation of the medical opinions provided for consideration.

#### a. Dr. Tom Dees

On March 21, 2021, Dr. Dees, a state agency medical consultant, reviewed Manning's medical records to conduct a residual functional capacity assessment. Dkt. 3-1, pp.191-200. Dr. Dees considered Manning's cystic fibrosis diagnosis. This diagnosis in combination with treatment history resulted in their determination that Manning had environmental limitations and should avoid even moderate exposure to fumes, odors,

dusts, gases, and poor ventilation. They further determined that Manning was able to perform sustained work at the "heavy/very heavy level." *Id.* Dr. Dees' report makes no notation as to which treatment timing was considered as appropriate for these limitations or standard treatment timing for Manning's existing diagnosis. The ALJ found the opinions of this state agency medical consultant only partially persuasive, noting that non-exertional environmental limitations are supported by record evidence while exertional related limitations are inconsistent with the record evidence. Dkt. 3-1, p. 66. Therefore, the ALJ acted to uphold the environmental restrictions which mitigate Manning's exposure to pulmonary irritants. *Id.*

### b. Dr. Michael Plasay, Ph.D.

On September 03, 2021, Dr. Plasay, a state agency medical consultant specializing in psychology, reviewed Manning's medical records to complete a psychiatric review. Dkt. No. 3-1, pp. 202-204. Dr. Plasay considered the existence of Manning's anxiety and trauma/stressor-related disorders, additionally reviewing her ongoing treatment with Counselor Jeter. *Id.* Dr. Plasay found evidence of mild mental limitations listed as: adapt or manage oneself; interact with others; concentrate, persist, or maintain pace; understand, remember, or apply information. *Id.* However, Dr. Plasay found that Manning's statements regarding symptom-related functional limitations and restrictions cannot reasonably be accepted as fully consistent the medical record evidence. *Id.* No determination of an appropriate treatment time or plan for Manning's existing diagnosis of post-traumatic stress disorder was made by Dr. Plasay. The ALJ found the opinion of the state agency medical consultant unpersuasive given the evidence received after the reconsideration date and hearing testimony. Dkt. 3-1, p. 72.

### c. Dr. Jeanine Kwun, M.D.

On August 30, 2021, Dr. Jeanine Kwun, a state agency medical consultant, reviewed Manning's medical records to create a residual functional capacity assessment. Dkt. No. 3-1, pp. 204-208. Dr. Kwun's findings are consistent with the other state agency evaluations. *Id.* Dr. Kwun noted that Manning's cystic fibrosis continues to be well-

controlled, evidenced by a spirometry reading (pulmonary function test) within normal limits. *Id.* The report makes no notation as to which treatment timing was considered as appropriate for Manning specifically or the standard individual treatment time for Manning's existing diagnosis. The ALJ found the opinions of the state agency medical consultant only partially persuasive, noting that non-exertional environmental limitations are supported by record evidence while exertional related limitations are inconsistent with the record evidence. Dkt. 3-1, p. 66.

### d. Dr. Joseph Tayar, M.D.

From 2006 to the application date, Dr. Joseph Tayar, a medical board-certified pediatric pulmonologist, acted as Manning's treating physician for issues related to her cystic fibrosis. Dr. Tayar is the primary healthcare manager for Manning's cystic fibrosis treatment plan. Dkt. No. 7, p. 5. According to Dr. Tayar's submitted "Physician Statement and Functional Assessment," Manning has a recognized diagnosis of cystic fibrosis which "does not meet the listings at this time." Dkt. No. 3-1, p. 1017. Dr. Tayar found that Manning's "daily treatment for cystic fibrosis usually requires at least 2 hours per day for nebulizers and cleaning treatments increase to 4 hours per day." *Id.*, p. 1010. The ALJ recites the statement by Dr. Tayar incorrectly by noting it as a "daily treatment for cystic fibrosis required two hours per day for nebulizer treatments and two hours for cleaning treatments." *Id.* Further, Dr. Tayar considers the Manning's cystic fibrosis diagnosis in conjunction with its supplemental ramifications like pancreatic insufficiency, noting that Manning receives pancreatic enzyme replacement therapy and "need[s] free access to fluids and food on demand". Dkt. No. 3-1, p. 1009, 1011. The ALJ opined that Dr. Tayar's medical opinions were only partially persuasive. *Id.* at 72. The ALJ agreed with Dr. Tayar's assessment of Manning's exertional and environmental limitations. However, the ALJ found inconsistencies in Dr. Tayar's evaluation on length of Manning's treatment time, noting that Dr. Tayar's own recent treatment notes show normal physical function and do not support a limitation of decreased concentration and one unexcused absence per month. *Id.*

### e. Counselor Jay L. Jeter, LPC-S

From September 2017 to the application date, Counselor Jay Jeter, a licensed professional counselor, acted as Manning's treating mental health clinician for issues surrounding her diagnoses of post-traumatic stress disorder and adjustment disorder with mixed anxiety. Dkt. No. 3-1, p. 1019. According to Counselor Jeter's "Medical Statement and Functional Assessment," it is likely that Manning will require "continued mental health support as she enters a less chaotic stage of her life." *Id*. Counselor Jeter also indicated that Manning had a "very good prognosis." *Id.* In further documentation, Counselor Jeter selected options describing Manning's condition as a serious and persistent trauma/and or stress related disorder but medical treatment, mental health therapy, psychosocial supports and highly structured setting diminish the symptoms and signs of the mental disorder. *Id.*, p. 1024. Remarks on Manning's physical capabilities were also included as affecting her mental health. *Id.* The ALJ found the mental (behavioral health) portion of Jeter's opinion supported from the treating relationship, but the ALJ opined that the physical health portion was not supported by treatment notes and were discounted as a result.

## III. Standard of Review

This Court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence and whether the proper legal standards were applied in reaching this decision. *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir. 1992). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court's role is applying the substantial evidence standard is

limited to making findings on the actions of the ALJ; it is not to "reweigh the evidence in the record, not try the issues *de novo*, nor substitute [the Court's] judgment for that of the [Commissioner's]. *Johnson v. Bowen*, 864 f.2d 340, 343. The decision by the ALJ must stand or fall on the rationale set forth in the ALJ's opinion. *Newton v. Apfel*, 209 F.3d 455, 458 (5th Cir. 2000).

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled for purposes of the Social Security Act, 42 U.S.C.S. §1381. This burden is satisfied if the claimant demonstrates a physical or mental impairment lasting at least twelve months that precludes that person from pursuing any substantial gainful activity. 42 U.S.C. §§ 4223(d)(1)(A), 1382c(a)(3)(A). Once the claimant satisfies the initial burden, it is then the responsibility of the administrative law judge to utilize a five-step sequential process to determine whether the claimant is capable of performing substantial gainful activity. This process is set forth in 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f).

Before turning to and examining the specific of the ALJ's decision in Manning's case, it is first necessary to understand the five-step sequential disability determination process.

## IV. Disability Determination Process

The Commissioner utilizes an inquiry based approach to determine an adult claimant's disability status.[2] The burden of proof lies with the claimant at each step; except for step five, which contains a shifting burden. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

### A. Step One

At step one of the inquiry, the claimant must show that they are not currently engaged in "substantial gainful activity," defined as activity "done (or intended) for pay

---

[2] (1) Is the claimant currently working? (2) Does the claimant have a medically severe impairment? (3) Does the impairment meet or equal an Appendix 1 listing for presumptive disability? (4) Does the impairment prevent the claimant from performing past relevant work? (5) Does the impairment prevent the claimant from performing any other work? 20 C.F.R. §§ 404.1520, 416.920.

or profit" that involves "doing significant and productive physical or mental duties." 20 C.F.R. § 404.1520(a)(4)(i), 20 C.F.R. §404.1510. A finding of no substantial gainful activity allows the inquiry to proceed to step two.

### B. Step Two

In step two, the claimant is required to demonstrate a medically severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one which significantly limits [the] physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Unless the impairment is expected to result in death, it must have lasted or be expected to last for at least 12 months. 20 C.F.R. § 404.1509.

### C. Step Three

The third step in the sequential evaluation process involves the application of the Social Security Administration's Listing of Impairments located at 20 C.F.R. Part 404 Subpart P Appx. 1. The claimant demonstrating a "listed impairment" or impairment equivalent to a listed impairment will be considered disabled without consideration of additional factors. 20 C.F.R. § 404.1520(d). If the claimant cannot show a listed impairment or its equivalent the process continues to step four. 20 C.F.R. § 404.1520(e). Movement from step three to step four requires the Commissioner to assess the RFC of the claimant, accounting for the physical and mental limitation substantiated in the record. 20 C.F.R. § 404.1520(a)(4), 20 C.F.R. §404.1545(a)(1). The RFC determination is then used for further evaluation in step four of the inquiry.

### D. Step Four

Arriving at step four, the claimant must show that he or she lacks the "residual functional capacity" to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as gainful activity performed within the last 15 years, where the claimant's employment lasted long enough for the claimant to learn how it is performed. 20 C.F.R. § 404.1560(b)(1).

Residual functional capacity is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, causing physical or mental limitations or restrictions that may affect their capacity to do work-related physical and mental activities." *Irby v. Barnhart*, 180 Fed. App'x. 491, 493 (5th Cir. 2006) (unpubl.) (citing Social Security Ruling 96-8p).[3]

In addressing the symptoms raised by the claimant, the ALJ is required to follow a two-step process. 20 C.F.R. § 404.1529(a); *Herrera v. Commissioner of Social Sec.*, 406 Fed. App'x. 899, 905 (5th Cir. 2010) (unpubl.). "Both SSR 96-7p and 20 C.F.R. § 404.1529 emphasize that subjective symptoms alone, absent some indication that they are supported by objective medical evidence, fail to support a disability finding." *Salgado v. Astrue*, 271 Fed. App'x. 456, 460 (5th Cir. 2008) (unpubl.). Thus, to establish a disability, the criteria in both of the following steps must be satisfied.

The first step in resolving the credibility of symptoms is a determination of whether the claimant suffers from a medically determinable impairment that is "reasonably capable of producing" the claimed symptoms. SSR 96-7p. Claimed symptoms "will not be found to affect [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b). The ALJ proceeds to the second step only if the claimant is found to have a medically determinable impairment capable of causing the alleged symptoms. *Winget v. Astrue*, 2007 WL 4975206, *10 (W.D. Tex. 2007) (unpubl.). In other words, a claimant will not receive a positive disability determination if their impairment would not objectively and reasonably cause the reported symptoms. On the other hand, if the medical evidence objectively identifies an impairment that could reasonably produce the claimed symptom, the inquiry turns to the severity and impact of that symptom.

---

[3] "The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. The Fifth Circuit has frequently relied upon the rulings in evaluating ALJ's decisions." *See* Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001).

The second step inquiry, then, is to evaluate the intensity, persistence, and limiting effects of the individual's symptoms" on a person's ability to do basic work activities. SSR 96-7p.  In performing this evaluation, the ALJ considers the objective medical evidence; the claimant's testimony; the claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; and the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms.  *Id.*

The ALJ also considers treatment other than medication that the individual receives or has received for relief of pain or other symptoms.  Finally, the ALJ also considers any other factors relating to the claimant's functional limitations and restrictions resulting from pain or other symptoms. *Id.*

If the ALJ finds that the claimant's current RFC is incompatible with the ability to perform his or her prior relevant work, the process moves to step five.

### **E. Step Five**

The fifth step requires the Commissioner to show that the claimant is capable of performing other work. 20 C.F.R. § 404.1520(a)(4)(v). Once the Commissioner makes the requisite showing, the burden shifts to the claimant to rebut the Commissioner. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

The Commissioner considers the claimant's RFC as well as the claimant's age, education, and experience, in determining whether the claimant can perform other substantial work within the national economy. 20 C.F.R. § 404.1520(g)(1); *Masterson*, 309 F.3d at 272.  Based upon these considerations, the Commissioner must show that the claimant can perform work in the national economy and that such work exists in significant numbers in that economy.

If the Commissioner can show that the claimant can perform other substantial work within the national economy, the claimant is adjudged not to be disabled. 20 C.F.R. § 404.1520(g)(1).  If the Commissioner fails to show that the claimant can perform other

work, or if the claimant successfully rebuts the Commissioner's findings, the claimant is found to be disabled and is entitled to disability benefits. *Id.*

## V. The ALJ's decision

In step one, the ALJ found that Manning had not engaged in substantial gainful activity since January 1, 2021, the application date. Dkt. No. 3-1, p. 60.

In step two, the ALJ found that Manning has severe impairments: cystic fibrosis, pancreatic insufficiency, adjustment disorder with mixed anxiety, and post-traumatic stress disorder (PTSD). Dkt. No. 3-1, p. 60-61.

In step three, the ALJ found that Manning did not have an impairment or combination of impairments that equaled the severity of a listed impairment, requiring an inquiry under step four. Dkt. No. 3-1, p. 61.

In step four, the ALJ found that Manning had the RFC to perform light work as defined in 20 C.F.R. § 416. 967(b), excepting concentrated exposure to irritants such as fumes, odors, gases, and poorly ventilated areas. Dkt. No. 3-1, p. 62. The ALJ also determined that Manning is unable to perform tasks involving multi-layer decision making or supervisory tasks; that Manning can perform more than simple but less than complex tasks that require only occasional judgment; can perform job tasks that do not have to be completed with within a strict time deadline; can interact occasionally with the public, supervisors and co-workers, and respond appropriately to occasional changes in routine work. *Id.*

As to Manning's physical limitations, the ALJ found that the medically determinable impairments could reasonably be expected to cause the alleged symptoms. Dkt. No. 3-1, p. 63. The ALJ also noted that the record evidence documents consistent treatment compliance but determined that the treatment records do not corroborate Manning's specific allegations about daily treatment minimums. *Id.* More specifically, the ALJ noted an appreciation for the severity of Manning's impairments but concluded the medical evidence and Manning's own statements concerning the intensity, persistence

and limiting effects of impairment symptoms are "not entirely consistent with each other." *Id.* This inconsistency is highlighted by the ALJ through a comparison of Manning's specific allegation of a four-hour minimum treatment time, her pulmonologists failure to specific the timing for each portion Manning's treatment protocol, a general pulmonologist statement claiming two separate two-hour treatment sessions, and no timing notation from the state agency evaluator. *Id.* at 64. Ultimately, the ALJ determined the state agency evaluator's opinion to be only partially persuasive and Manning's statements inconsistent. *Id*. at 66.

As to Manning's psychological limitations, the ALJ found that Manning's mental health symptoms could be adequately accounted for in a residual functional capacity assessment. The ALJ relied on record evidence from Manning, her treating therapist, and the state agency psychological consultant. *Id.* at 64. However, the ALJ noted that the opinions of the state agency consultants were "unpersuasive," and the ALJ instead established functional limitations resulting from PTSD through hearing testimony and evidence received after the reconsideration date. *Id.* at 66.

In step five of the process, the ALJ found Manning has no past relevant work, and therefore transferability of job skills is not an issue. *Id.* Using vocational expert testimony, the ALJ found the full range of light work was not available to Manning when the determined RFC includes environmental limitations. *Id.*

## VI. Assignment of Errors

Manning contends that the Commissioner erred in finding her not disabled. More specifically, she contends that the ALJ erred in evaluating her residual functional capacity at step four of the sequential evaluation process by failing to include consideration of her intensive treatment regimen. Dkt. No. 7, p. 59. She also argues the ALJ's decision is not supported by substantial evidence. Dkt. No. 7, p. 11. Manning final point of argument is that the ALJ elected to view the record of her testimony and medical treatment plans as inconsistent without determining which elements were relied upon for ultimate RFC determination. Dkt. No. 7, p.11.

**VII. Analysis**

**The Administrative Law Judge failed to evaluate Manning's residual functional capacity at step four of the disability determination process as a function of time-intensive compliance with medical treatment protocols.**

To evaluate Manning's residual functional capacity, the ALJ utilized a two-part inquiry:

> (1) Is there an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms?
>
> (2) To what extent do the intensity, persistence, and other limiting effects impact the claimant's ability to engage in work-related activity?

At the first part of this inquiry, the ALJ found Manning met her burden of establishing several underlying determinable medical impairments. Dkt. No. 3-1, p. 63. At the second step of the inquiry, the ALJ noted that the statements concerning "intensity, persistence and limiting effects of symptoms are not entirely consistent with the medical evidence." *Id.* The ALJ found that Manning engaged in consistent treatment compliance, but the "treatment records do not corroborate her specific allegations that daily treatment takes a minimum of four hours." *Id.* This comment is seemingly made in reference to Manning's cystic fibrosis diagnosis and record evidence from her treating pulmonologist, Dr. Joseph E. Tayar. Manning's cystic fibrosis was evaluated in step three of the disability determination process and found insufficient to meet the criteria of Social Security Administration's Listing of Impairments. *Id.,* at 61; 20 C.F.R. Part 404 Subpart P Appx.

Manning acknowledges that when compliant with treatment, her impairment does not meet the listing criteria for cystic fibrosis. However, Manning contends the RFC determination is predicated on her compliance with the intensive treatment regimen required to stabilize symptoms of cystic fibrosis. Dkt. No. 7, p. 7. This treatment regimen is necessarily tailored to Manning's current presentation of symptoms; symptoms the

ALJ already recognizes as dependent on "environmental limitations." Dkt. No. 3-1, p. 64, 66. While variable, Manning alleges a treatment regimen the includes multiple daily airway clearances by high frequency chest wall oscillation, daily nebulizer treatments, and several time-sensitive pharmaceutical prescriptions. Dkt. No. 7, p. 4.

Manning is not the first to base her appeal on the premise that stable cystic fibrosis depends upon compliance with therapies and medication.[4] *Sopko v. Saul,* No. 19-326, 2020 U.S. Dist. LEXIS 39934 (W.D. Pa. 2020). In *Sopko*, the Plaintiff alleges a substantially similar cystic fibrosis treatment regimen, lack of standard listing impairment qualification, high compliance with treatment, and the ALJ's failure to account for treatment time in determining an RFC. There, the reviewing *Sopko* Court found that if an ALJ determines RFC using a claimant's stable cystic fibrosis, the resulting RFC is necessarily premised on compliance with appropriate therapies. Consequently, the ALJ is required to explain their findings on the treatments and medications necessary to maintain stability of the underlying impairment such that the RFC remains an accurate reflection of performance capability. Here, the ALJ references Manning consistent treatment compliance without explicitly adopting a medical opinion or explicitly rejecting Manning's testimony as to the time requirements of treatment. Dkt. 3-1, p. 63. Instead, the ALJ notes Manning's testimony as "not entirely consistent with the medical evidence" and the medical opinions of state agency experts as "partially persuasive." *Id.* at 66.

The Fifth Circuit Court of Appeals has recognized that an "impairment controlled or remedied by medication or therapy cannot serve as a basis for a finding of disability." *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988). The Fifth Circuit relies considerably on the ALJ's obligation to consider functional limitations in step three of the disability determination process in accordance with the statutory language provided in SSR 96-8P. However, The Fifth Circuit Court of Appeals has addressed the role of

---

[4] Though non-precedential, this Court finds the reasoning of the Third Circuit case particularly persuasive in light of the similarities between the plaintiffs diagnoses and treatment regimen.

compliance with time-intensive treatment plans functioning to manage symptoms of disease that would otherwise likely result in determination of severe impairment. *Newton v. Apfel*, 209 F.3d 448.  In that case, it was found that "if an individual's medical treatment significantly interrupts the ability to perform a normal, eight-hour workday, then the ALJ must determine whether the effect of treatment precludes the claimant from engaging in gainful activity." *Newton* at 459.  Recommendation extended to expressly direct that "the ALJ shall consider the effect of *on-going treatment* on (claimant's) ability to remain gainfully employed during the period of claimed disability."  *Id.* (emphasis added).

      Here, the ALJ determined that consistent treatment exists and interferes with gainful activity for Manning such that she has not engaged in substantial gainful activity since the application date.  Dkt. No. 3-1, p. 60.  The ALJ heard testimony from a vocational expert who answered hypothetical questions regarding the different occupational absences or regularly scheduled breaks that would preclude participation in the national economy through employment. Dkt. No. 3-1, pp. 183-188. Treatment compliance as evidenced by some of the medical opinions and hearing testimony would, in the opinion of the vocational expert, preclude jobs currently in marketplace; some of the medical opinions on treatment timing, however, leave open the possibility of gainful employment. *Id.*, p. 86.  Without further clarification, the ALJ did not provide a sufficient basis for evaluation under substantial evidence standard used in the determination of a treatment plan and its timing as it affects Manning's possibility of gainful employment. The ALJ is "*required to articulate 'supportability" and "consistency' in her decision.*" (emphasis added)  20  C.F.R.  §404.1545(a)(3);  20  C.F.R. § 404.1520c(b)(2). "Supportability" means that a medical opinion is "more persuasive" when it is supported by relevant objective medical evidence and explanations provided by the same medical source. 20 C.F.R. § 404.1520c(c)(1). "Consistency" means that a medical opinion is "more persuasive" when it coincides "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). In other words, "supportability looks internally to the bases presented by the medical opinion itself"

while "consistency is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical professionals." *Sharon H. v. Kijakazi*, No. 5:21-CV-167-H, 2022 WL 3951488, at 3 (N.D. Tex. Aug. 31, 2022).

It is true that "there is no need for the ALJ to discuss each and every piece of evidence in the record, nor does the ALJ's failure to discuss the evidence actually establish a failure to consider the evidence. See *Castillo v. Barnhart*, 151 F. App'x 334, 2005 WL 2675002 at 1 (5th Cir. 2005) (citing *Falco v. Shalala*, 27 F. 3d 160, 163 (5th Cir. 1994)). The ALJ is also entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record, see *Scott v. Heckler*, 770 F.2d at 485. However, the "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports [her] position*." Armstrong v. Sullivan*, 814 F. Supp. 1364, 1373 (W.D. Tex. 1993). "The ALJ must address and make specific findings regarding the supporting and conflicting evidence, the weight to give that evidence, and reasons for his or her conclusions regarding the evidence." *Id.* The ALJ, here, affirmatively found inconsistent record evidence as to treatment time, and they found that treatment time is unsupported by medical evidence. Dkt. No. 3-1, p. 63. The ALJ makes no reference to the weight assigned to the relevant medical evidence on treatment time. The ALJ additionally misquotes Manning's oral testimony as to treatment time, layering error upon inconsistency. Dkt. No. 3-1, pp. 63;176-178. These internal conflicts leave the reviewing Court unable to apply the deferential substantial evidence standard, because there is a lack of articulation as to the utilized supportive findings and the weight assigned to them.

## VIII. Recommendation

It is recommended that the Plaintiff's motion for summary judgment and petition for review of the denial of Social Security Income Benefits filed by Kendra Noel Manning be granted. It is further recommended that this case be remanded to the Commission of Social Security for further proceedings consistent with this report and recommendation.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a *de novo* review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a *de novo* review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

Signed on December 14, 2023.

*Karen Betancourt*
Karen Betancourt
United States Magistrate Judge